Steven John Moser (SM1133)
Steven J. Moser, P.C.
3 School Street, Suite 207B
Glen Cove, New York  11542
(516) 671-1150 • F (516) 882-5420
*Attorney for Plaintiffs*

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  |JUL 29 2014|  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Andres De Los Santos, Domingo Franco, Angel Rodriguez, Ramon
Santos, and Jose Ramon Lopez, individually and on behalf of all
others similarly situated,

Plaintiffs,

-against-

New Food Corp. d/b/a Foodtown, JCA Food Corp. d/b/a Metfood,
JJC Food Corp. d/b/a  Foodtown, SWF Food Corp. d/b/a Foodtown,
Mother Food Corp. d/b/a  Foodtown, Jason Ferreira and Jose
Ferreira,

Defendants.

Case No.:

# CV-14 4541

**COMPLAINT**

# BIANCO, J.

# TOMLINSON, M

## CLASS ACTION COMPLAINT

Plaintiffs Andres De Los Santos, Domingo Franco, Angel Rodriguez, Ramon Santos, and

Jose Ramon Lopez (the "Individual Plaintiffs"), individually and on behalf of all others similarly

situated, allege as follows:

### INTRODUCTION

1.     This case is an action to remedy the failure of the Defendants to pay Plaintiffs'

overtime premium pay as required by the Fair Labor Standards Act (FLSA) 29 U.S.C. §201 et

seq. and the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State

Department of Labor Regulations, 12 N.Y.C.R.R. Part 142; and for failure to pay spread of hours

1

pay under 12 NYCRR § 142-2.4; and for Wage Statement and Wage Notice violations of the New York Labor Law, as amended by the New York Wage Theft Prevention Act, effective April 9, 2011 (NYLL § 195).

2.    The Defendants' plan and policy to deprive employees of overtime was twofold: First, each employee was paid only up to a number of hours determined by the Defendants, regardless of whether the employee worked overtime hours that far exceeded the overtime "limit" imposed by the employer.   Second, some employees were paid a straight rate for overtime hours worked, rather than the proper overtime rate.

3.    The Defendants' method of evading detection was equally simple:   They fabricated wage and hour records to feign compliance with wage and hour laws.   One set of books, which is kept for the benefit of the U.S. Department of Labor, the New York State Department of Labor, the Internal Revenue Service and the New York State Tax Department, reports that employees earn the minimum wage and work precisely 40 hours per week.   This first forty hours at the minimum wage are paid in cash "on the books" and are subject to withholding.       Any straight wages earned in excess of the minimum wage, as well as all overtime, are paid in cash "off the books."   This allows the Defendants to manipulate overtime hours while feigning compliance with wage, hour, and tax laws.

4.    The Individual Plaintiff's bring their federal claims on  behalf of the FLSA Collective (as hereinafter defined) under 29 U.S.C. §216, and their state claims on behalf of the New York Class (as hereinafter defined) under Fed. R. Civ. P. 23.   The Individual Plaintiffs, the FLSA Collective, and the New York Class are collectively referred to herein as the Plaintiffs.

## THE FERREIRA ENTERPRISE

5.      The Ferreira Enterprise consists of a chain of five supermarkets currently doing business as Ferreira Foodtown, owned and operated by Jason Ferreira and Jose Ferreira (the "Ferreira Family"). Prior to the summer of 2013, the five supermarkets comprising the Ferreira Enterprise were doing business as Metfood. The five Ferreira supermarkets are located at 76-10 37th Avenue, Jackson Heights; 84-05 Parsons Blvd, Jamaica; 173-09 Jamaica Avenue, Jamaica; 520 S. Broadway, Hicksville; and 3367 Hillside Avenue, New Hyde Park, New York. Ferreira Foodtown operates as a grocery retailer, with online shopping services in addition to physical store locations. Each Ferreira Foodtown supermarket presently offers more than 10,000 products, including the store's "personal private brand of Ferreira Foods." http://www.ferreirafoodtown.com (last visited 7/12/2014).

6.      Prior to the summer of 2013, while the five Ferreira supermarkets comprising the Ferreira Enterprise operated as Metfood, the Ferreira Enterprise engaged in rampant wage violations in violation of both New York State and Federal Law.

7.      Defendants have wilfully and systematically ignored the requirements of the FLSA and NYLL, including recordkeeping requirements; have failed to compensate their employees for all overtime hours worked; have failed to compensate their employees for spread of hours pay; have failed to provide Wage Notices as required by NYLL §195(3); and have failed to provide Wage Statements on or after February 1, 2012 as required by NYLL §195(1). The Defendants' willfulness is exhibited by their widespread practice of federal, state and city laws, including the Social Security Act, the Internal Revenue Code, the New York Wage Theft Protection Act, the New York Penal Law, New York Disability Benefits Law, New York Tax Law and New York City Tax Law.

3

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims in this action occurred within the Eastern District of New York.

## PARTIES

### *Individual Plaintiffs*

11.     Plaintiff Andres De Los Santos is a natural person who resides in Queens County, New York.

12.     At times during the six year period prior to the filing of this complaint (the "relevant time period"), Andres De Los Santos was employed by Defendant JCA Food Corp.

18.     Plaintiff Domingo Franco is a natural person who resides in Queens County, New York.

13.     At times during the relevant time period, Domingo Franco was employed by the Defendant JCA Food Corp.

14.     Plaintiff Angel Rodriguez is a natural person who resides in Queens County, New York.

15.     At times during the relevant time period, Plaintiff Angel Rodriguez was employed by the Defendant Mother Food Corp.

4

16.     Plaintiff Ramon Santos is a natural person who resides in Queens County, New York.

17.     At times during the relevant time period, Ramon Santos was employed by the Defendant JCA Food Corp.

18.     Plaintiff Jose Ramon Lopez is a natural person who resides in Queens County, New York.

19.     At times during the relevant time period, Jose Ramon Lopez was employed by the Defendant Mother Food Corp.

### Defendant New Food Corp.

20.     Defendant New Food Corp. is a New York corporation.

21.     Defendant New Food Corp. maintains a principal place of business at 3367 Hillside Avenue, New Hyde Park, New York, 11040.

22.     Upon information and belief, Defendant New Food Corp. supervised Plaintiffs, determined and exercised control over the hours worked, determined and exercised control over the rate of pay and wages paid to the Plaintiffs, and maintained payroll records.

23.     Defendant New Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

24.     Defendant New Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

### Defendant JCA Food Corp.

25.     Defendant JCA Food Corp. is a New York Corporation.

26.     Defendant JCA Food Corp. (alternatively the "Parsons Blvd. supermarket") maintains a principal place of business at 84-05 Parsons Blvd., Jamaica, New York, 11432.

27.     Upon information and belief, JCA Food Corp. supervised the Plaintiffs, determined and exercised control over the hours worked, determined and exercised control over the rate of pay and wages paid to the Plaintiffs, and maintained payroll records.

28.     Defendant JCA Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

29.     Defendant JCA Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant JJC Food Corp.*

30.     Defendant JJC Food Corp. is a New York Corporation.

31.     Defendant JJC Food Corp. maintains a principal place of business at 520 South Broadway, Hicksville, New York, 11801.

32.     Upon information and belief, Defendant JJC Food Corp. supervised Plaintiffs, determined and exercised control over the hours worked, determined and exercised control over the rate of pay and wages paid to the Plaintiffs, and maintained payroll records.

33.     The Defendant JJC Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

34.     The Defendant JJC Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant SWF Food Corp.*

35.     Defendant SWF Food Corp. is a New York Corporation.

36.     Defendant SWF Food Corp. maintains a principal place of business at 76-10 37th Avenue, Jackson Heights, New York, 11372.

37.     Upon information and belief, Defendant SWF Food Corp. supervised Plaintiffs, determined and exercised control over the hours worked, determined and exercised control over the rate of pay and wages paid to the Plaintiffs, and maintained payroll records.

38.     Defendant SWF Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

39.     Defendant SWF Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant Mother Food Corp.*

40.     Defendant Mother Food Corp. is a New York Corporation.

41.     Defendant Mother Food Corp. (alternatively the "Jamaica Avenue supermarket") maintains a principal place of business is located at 173-09 Jamaica Avenue, Jamaica, New York, 11432.

42.     Upon information and belief, Defendant Mother Food Corp. supervised Plaintiffs, determined and exercised control over the hours worked, determined and exercised control over the rate of pay and wages paid to the Plaintiffs, and maintained payroll records.

43.     Defendant Mother Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

44.     Defendant Mother Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*The Ferreira Enterprise*

45.     New Food Corp., JCA Food Corp., JJC Food Corp., SWF Food Corp., and Mother Food Corp. (the "Ferreira Enterprise"), acted as a unified operation under common ownership and control, for a common business purpose.

7

46.     The Ferreira Enterprise employed the Plaintiffs during the relevant time period.

*Defendant Jason Ferreira*

47.     Jason Ferreira is a natural person residing at 57 Robby Lane, New Hyde Park, New York.

48.     At times during the relevant time period Defendant Jason Ferreira has been an officer of New Food Corp.

49.     At times during the relevant time period Defendant Jason Ferreira has been an officer of JCA Food Corp.

50.     At times during the relevant time period Defendant Jason Ferreira has been an officer of JJC Food Corp.

51.     At times during the relevant time period Defendant Jason Ferreira has been an officer of SWF Food Corp.

52.     At times during the relevant time period Defendant Jason Ferreira has been an officer of Mother Food Corp.

53.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of New Food Corp.

54.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of JCA Food Corp.

55.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of JJC Food Corp.

56.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of SWF Food Corp.

57.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of Mother Food Corp.

58.     At times during the relevant time period, Jason Ferreira has exercised operational control over the Ferreira Enterprise.

59.     At times during the relevant time period, Jason Ferreira had the power to hire and fire Plaintiffs.

60.     At times during the relevant time period, Jason Ferreira controlled Plaintiffs' terms and conditions of employment, and determined the rate and method of their compensation.

61.     The Defendant Jason Ferreira is an employer within the meaning of the FLSA and the NYLL, and during the relevant time period employed the Plaintiffs.

*Defendant Jose Ferreira*

62.     Jose Ferreira is a natural person residing at 23 Royal Way, New Hyde Park, New York, 11040.

63.     At times during the relevant time period Defendant Jose Ferreira has been an officer of New Food Corp.

64.     At times during the relevant time period Defendant Jose Ferreira has been an officer of JCA Food Corp.

65.     At times during the relevant time period Defendant Jose Ferreira has been an officer of JJC Food Corp.

66.     At times during the relevant time period Defendant Jose Ferreira has been an officer of SWF Food Corp.

67.     At times during the relevant time period Defendant Jose Ferreira has been an officer of Mother Food Corp.

9

68.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of New Food Corp.

69.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of JCA Food Corp.

70.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of JJC Food Corp.

71.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of SWF Food Corp.

72.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of Mother Food Corp.

73.     At times during the relevant time period, Jose Ferreira has exercised operational control over the Ferreira Enterprise.

74.     At times during the relevant time period, Jose Ferreira had the power to hire and fire Plaintiffs.

75.     At times during the relevant time period, Jose Ferreira controlled Plaintiffs' terms and conditions of employment, and determined the rate and method of their compensation.

76.     The Defendant Jose Ferreira is an employer within the meaning of the FLSA and the NYLL, and at all during the relevant time period employed the Plaintiffs.

LAW

*Overtime*

77.     The FLSA (29 U.S.C. 207) and the New York Labor Law (12 NYCRR 142-2.2) require that an employer pay overtime at one and one half times the employees regular rate for all hours worked in excess of 40 hours per week.

10

### Spread of Hours Pay

78.     The New York Labor Law (12 NYCRR 142-2.4) requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the "spread of hours" exceeds ten hours.  The spread of hours regulations were intended to apply to those earning the minimum wage. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 118 (S.D.N.Y. 2012).  The spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  12 NYCRR 142-2.18.

### Wage Notices

79.     The New York Labor Law, as amended by the Wage Theft Prevention Act, effective April 9, 2011, requires all employers to provide employees a notice containing, *inter alia* the employee's regular rate and overtime rate.  NYLL §195(1).

80.     For each week in which the employee does not receive the require wage notice, the employee may recover in a civil action $50, up to a total of $2,500.00, as well as costs and attorney's fees.  NYLL §198-1-b.

### Wage Statements

81.     NYLL §195-3, requires each employer to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For non-exempt employees, the statement must include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

82.     For each week in which an employer does not provide an employee a wage statement in conformity with the requirements of NYLL §195-3, the employee is entitled to recover $100, up to a total of $2,500.00 as well as costs and attorney's fees.   NYLL §198-1-d.

## FACTS

### *Factual Allegations Common to All Individual Plaintiffs*

83.     The Individual Plaintiffs are a group of grocery clerks, dairy department workers, maintenance workers, and in other in-store workers who have been employed by the Ferreira Enterprise during the relevant time period.

84.     Each of the Individual Plaintiffs assisted in the handling of goods that had been transported in interstate commerce, such as dairy products, meats, groceries and other foods.

85.     Each of the Individual Plaintiffs was required to work in excess of 40 hours per week during the relevant time period.

86.     Each of the Individual Plaintiffs worked uncompensated overtime hours for the Defendants within the three years prior to the filing of this complaint.

87.     The Defendants never provided the Individual Plaintiffs with an accurate statement of wages with each payment of wages, as required by NYLL 195(3), and instead provided the Individual Plaintiffs with an envelope on which was written the total amount of cash in the envelope.

88.     Prior to January 2014, the Defendants never provided any notice to the Individual Plaintiffs in English and in Spanish (their primary language), of their rate of pay, employer's regular pay day, and such other information as required by NYLL §l95(1).

*Individual Factual Allegations*

89.    The following individual factual allegations are best approximations based upon the recollection of the individual Plaintiffs.   The Plaintiffs reserve the right to amend their individual factual allegations to the extent that records exist which either refresh the Plaintiffs' recollections or may be used to substantiate the exact number of hours worked and/or wages paid.

*Andres De Los Santos*

90.    Plaintiff Andres De Los Santos worked at the Parsons Boulevard supermarket as a grocery clerk from approximately January 1998 to September 28, 2013.

91.    From approximately January 1998 to August 2012, Plaintiff De Los Santos regularly worked from approximately 8:00 a.m. to approximately 9:00 p.m., with a 1 hour unpaid lunch, for a total of approximately 12 working hours per day, 6 days a week, from Monday through Saturday, every week, for a total of approximately 72 working hours per week.

92.    Although Plaintiff De Los Santos regularly worked overtime during the relevant time period, he was not paid for all overtime hours worked.  Instead, he was paid for the first 56 hours worked, regardless of whether his actual hours worked far exceeded that amount.

93.    For example, for the week ending June 15, 2012, Plaintiff De Los Santos was paid for only 16 hours of overtime, despite the fact that he worked in excess of 16 hours of overtime

94.    For example, for the week ending June 22, 2012, Plaintiff De Los Santos was paid for only 16 hours of overtime, despite the fact that he worked in excess of 16 hours of overtime.

95.    For example, for the week ending June 29, 2012, Plaintiff De Los Santos was paid for only 16 hours of overtime, despite the fact that he worked in excess of 16 hours of overtime.

96.     Plaintiff De Los Santos worked a spread of hours exceeding 10 for virtually every workday between January 2008 and approximately August 2012.

97.     Plaintiff De Los Santos earned the minimum wage between January 2008 and August 2012.

98.     The Defendants never paid Plaintiff De Los Santos spread of hours pay.

99.     Plaintiff De Los Santos was discharged in September 2013.

*Domingo Franco*

100.     Plaintiff Domingo Franco worked in the Parsons Boulevard supermarket from approximately August 2010 to October 26, 2013.

101.     Plaintiff Franco worked in the Dairy Department in the Parsons Boulevard supermarket.

102.     From about August 2010 to October 26, 2013, Plaintiff Franco's scheduled shift was from 9:00 a.m. to 7:00 p.m., with a 1 hour unpaid lunch, for a total of 9 working hours per day, from Tuesday through Sunday.   His scheduled workweek was therefore 54 hours.

103.     Mr. Franco regularly worked more than 54 hours per week during the relevant time period, but he was not paid for *all* overtime hours worked.  Instead, he was paid for the first 54 hours worked, regardless of whether his actual hours worked far exceeded that amount.

104.     The Defendants discharged Plaintiff Franco on October 26, 2013.

*Angel Rodriguez*

105.     Plaintiff Angel Rodriguez worked in the Jamaica Avenue supermarket from approximately December 26, 2000 to April 15, 2013.

106.     During the entire course of his employment with the Defendants, Plaintiff Rodriguez regularly worked from approximately 8:00 a.m. to 7:00 or 8:00 p.m., with a 1 hour

14

unpaid lunch, for a total of 10 to 11 working hours per day, 6 days a week, from Tuesday through Sunday every week, for a total workweek of between approximately 60 to 66 hours.

107.    Plaintiff Rodriguez was only paid for the first 60 hours of work, regardless of the actual number of hours worked.    Furthermore, the Defendants paid for overtime hours at the regular rate of pay, rather than at the proper overtime rate.

108.    Plaintiff Rodriguez regularly worked a spread of hours exceeding 10 between December 2007 and December 2012.

109.    Between December 2007 and December 2012 Plaintiff Rodriguez earned the minimum wage.

110.    The Defendants never paid Plaintiff Rodriguez spread of hours pay.

111.    The Defendants discharged Plaintiff Rodriguez on April 15, 2013.

### Ramon Santos

112.    Plaintiff Ramon Santos worked in the Defendants' Parsons Boulevard supermarket from approximately 1994 until approximately February 2014 as a maintenance worker.

113.    During the last six years of his employment with the Defendants, Ramon Santos' regular shift was from 11:00am until 9:30pm, from Saturday through Thursday with a one hour lunch.  His weekly schedule was approximately 57 hours, and he regularly continued working after the end of his shift.

114.    Throughout his employment with the Defendants, the Defendants only paid Ramon Santos for a 54 hour 11 minute workweek, regardless of the actual number of hours worked.

115. For example, for the week ending June 29, 2012, the Defendants only paid Ramon Santos for 54 hours and 10 minutes, despite the fact that he worked in excess of 54 hours and 10 minutes. Based upon Plaintiff Santos' stated rate of $7.81 he was paid $478.00 before deductions and $421.00 after deductions.

116. For example, for the week ending July 27, 2012, the Defendants only paid Ramon Santos for 54 hours and 11 minutes, despite the fact that he worked in excess of 54 hours and 11 minutes. Based upon Plaintiff Santos' stated rate of $7.81 he was paid $478.00 before deductions and $421.00 after deductions.

117. For example, for the week ending August 3, 2012, the Defendants only paid Ramon Santos for 54 hours and 11 minutes, despite the fact that he worked in excess of 54 hours and 11 minutes. Based upon Plaintiff Santos' stated rate of $7.81 he was paid $478.00 before deductions and $421.00 after deductions.

118. At times during the relevant time period Plaintiff Santos was paid the minimum wage.

119. During the relevant time period Plaintiff Santos regularly worked a spread of hours exceeding 10.

120. The Defendants never paid Plaintiff Santos the New York Spread of Hours Pay.

121. The Defendants discharged Plaintiff Santos on January 15, 2014.

*Jose Ramon Lopez*

122. Plaintiff Jose Ramon Lopez worked in the Defendants' Jamaica Avenue supermarket from approximately 2000 until approximately July 2014.

123. Plaintiff Lopez regularly worked overtime hours during the relevant time period for which he was not paid by the Defendants.

16

124.     For example, for the week ending June 27, 2014, Plaintiff Lopez' regular rate of pay was $10 per hour and his overtime rate was $15 per hour.   He worked at least 60.3 hours. However, he was only paid for the first 60 hours of work, or $700.00.

125.     For example, for the week ending June 20, 2014, Plaintiff Lopez' regular rate of pay was $10 per hour and his overtime rate was $15 per hour.   He worked at least 60.32 hours. However, he was only paid for the first 60 hours of work, or $700.00.

126.     The Defendants discharged Plaintiff Lopez in July 2014.

*The Defendants Constitute Joint Employers of the Plaintiffs*

127.     Upon information and belief, Jason Ferreira and Jose Ferreira possessed operational control over the Ferreira Enterprise possessed an ownership interest in each of the corporate Defendants, and controlled significant functions of said corporations.

128.     All of the Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

129.     Upon information and belief, each of the Defendants possessed or possesses substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs.

130.     The Defendants jointly employed Plaintiffs and were their employers within the meaning of 29 U.S.C. §201 et seq. and the NYLL.

131.     In the alternative, the Defendants constitute a single employer of Plaintiffs.

132.     Upon information and belief, the Individual Defendants operate the Corporate Defendants as either an alter ego of themselves, and/or fail to operate the Defendant Corporations as entities legally separate and apart from themselves by, among other things:

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

(b) defectively forming or maintaining Defendant Corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records, transferring assets and debts freely between the corporations comprising the Ferreira Enterprise;

(c) operating Defendant Corporations for their own benefit as the sole or majority shareholders;

(d) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations or closely held controlled entities, and

(e) other actions evincing a failure to adhere to the corporate form.

133. Upon information and belief, for each calendar year within the relevant time period and up to the present time, the Ferreira Enterprise's annual gross volume of sales made or business done was not less than $500,000.00.

134. The Ferreira Enterprise has been an enterprise engaged in interstate commerce during the relevant time period.

CLASS ACTION ALLEGATIONS

135. The Individual Plaintiffs bring the *Second, Third, and Fourth Causes of Action* under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all hourly employees of the Ferreira Enterprise who have been employed by the Ferreira Enterprise at any time during the six year period prior to the filing of this complaint (the "New York Class").

136.     The Individual Plaintiffs Andres De Los Santos, Angel Rodriguez, and Ramon
Santos also bring the *Fifth Cause of Action* under Rule 23 of the Federal Rules of Civil
Procedure on behalf of themselves and a Subclass consisting of all hourly employees of the
Ferreira Enterprise who have been employed by the Ferreira Enterprise during the relevant time
period (the "Subclass").

137.     Excluded from the New York Class and Subclass (collectively referred to herein
as the "Classes") are Defendants' legal representatives, officers, directors, assigns, and
successors, or any individual who has, or who at any time during the class period has had, a
controlling interest in Defendants, and all persons who will submit timely and otherwise proper
requests for exclusion from the Classes.

138.     The persons in the New York Class and Subclass identified above are so
numerous that joinder of all members is impracticable.  Although the precise number of such
persons is not known to Individual Plaintiffs, the facts on which the calculation of that number
can be based are presently within the sole control of Defendants.

139.     Upon information and belief, the size of the New York Class is estimated to be at
least 200 workers, and the size of the Subclass is estimated to be at least 50 workers.

140.     Defendants acted or refused to act on grounds generally applicable to the New
York Class and Subclass, thereby making appropriate final injunctive relief or corresponding
declaratory relief with respect to the Classes as a whole.

141.     The *Second, Third, Fourth and Fifth Causes of Action* are properly maintainable
as class actions under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and
fact common to the Classes that predominate over any questions solely affecting individual
members of the Classes, including but not limited to:

    (a) whether Defendants failed to keep true and accurate time records for all hours worked by the Individual Plaintiffs and the New York Class;

    (b) whether Defendants failed and/or refused to pay the Individual Plaintiffs and the New York Class overtime pay for hours worked in excess of 40 hours per workweek within the meaning of NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

    (c) whether the Defendants complied with the wage notice provisions of the Wage Theft Prevention Act;

    (d) whether the Defendants complied with the wage statement provisions of the New York Labor Law;

    (e) whether the Defendants complied with the New York spread of hours premium regulations.

142.   Upon information and belief, the damages sustained by each member of the New York class and Subclass can be determined by an analysis of the class members' payroll records and employee file, as well as representative testimony.   No special proof as to individualized damages is required.

143.   The claims of the Individual Plaintiffs are typical of the claims of the New York Class and Subclass they seek to represent. The Individual Plaintiffs and the class members work or have worked for Defendants and have been subjected to their policy and pattern or practice of failing to pay overtime wages for all hours worked in excess of 40 hours per week.   The Individual Plaintiffs and the class members have been subject to the Defendants' policy and pattern or practice of failing to provide wage statements and wage notices that comply with the

Wage Theft Prevention Act. The Individual Plaintiffs and the class members have also been subject to the Defendants' uniform policy of failing to pay spread of hours pay when required. Defendants acted and refused to act on grounds generally applicable to the New York Class and Subclass, thereby making declaratory relief with respect to the New York Class and Subclass appropriate.

144.     The Individual Plaintiffs will fairly and adequately represent and protect the interests of the New York Class and Subclass. The Individual Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the New York Class and Subclass to represent the classes' interests fairly and adequately.  The Individual Plaintiffs recognize that as class representatives, they must represent and consider the interests of the New York Class and Subclass just as they would represent and consider their own interests. The Individual Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interest over those of the classes. The Individual Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the classes. The Individual Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

145.     The Individual Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

146.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a

21

lawsuit in federal court. The members of the New York Class and Subclass have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the New York Class and Subclass are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## COLLECTIVE ACTION ALLEGATIONS

147. Individual Plaintiffs bring the FLSA claims, the First Cause of Action, on behalf of themselves and all similarly situated persons who have worked for the Ferreira Enterprise for the three year period prior to the filing of the complaint and who opt-in to this action (the "FLSA Collective").

148. The FLSA claims in this lawsuit should be adjudicated as a collective action. Upon information and belief, there are many similarly situated current and former employees of the Ferreira Enterprise who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## WILFULLNESS ALLEGATIONS

149. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and state wage and hour laws. This policy and pattern or practice includes but is not limited to:

22

(a) willfully failing to pay their employees overtime wages for all hour worked in excess of 40 hours per week;

(b) in some instances paying for overtime hours at the regular rate of pay, rather than the proper overtime rate;

(c) willfully failing to provide wage notices as required by section 195 of the New York Labor Law;

(d) wilfully failing to provide wage statements that comply with section 195 of the New York Labor Law; and

(e) wilfully failing to pay the spread of hours premium when required.

150.   Upon information and belief, Defendants were or should have been aware that their actions as described in this complaint violated both state and federal law.

## FIRST CAUSE OF ACTION:

## OVERTIME

## Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

## On behalf of Individual Plaintiffs and the FLSA Collective

151.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

152.   Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

153.   At all times relevant, Individual Plaintiffs and the members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

154.    The overtime wage provisions set forth in the FLSA apply to Defendant and protect Individual Plaintiffs and the FLSA Collective.

155.    Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

156.    Defendants' employees handled, sold and otherwise worked on goods or materials that have been moved in or produced for commerce by any person, and Defendants have at least $500,000 of annual gross volume of sales made.

157.    At all times relevant, Individual Plaintiffs and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

158.    The Defendants employed the Individual Plaintiffs and the FLSA Collective as employers.

159.    Defendants failed to pay the Individual Plaintiffs and the members of the FLSA Collective the overtime wages to which they are entitled under the FLSA.

160.    Defendants failed to keep accurate records of time worked by Plaintiff and the members of the FLSA Collective.

161.    Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

162.    Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Individual Plaintiffs and the members of the FLSA Collective.

163.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

164.    As a result of Defendant's violations of the FLSA, Individual Plaintiffs and the members of the FLSA Collective have suffered damages by being denied overtime wages in

24

accordance with the FLSA in amounts to be determined at trial, including liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

## SECOND CAUSE OF ACTION:

### OVERTIME

**New York Labor Law Article 19, §§ 650 et seq., and 12 N.Y.C.R.R. Part 142**

**On behalf of the Individual Plaintiffs and the New York Class**

165.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

166.    Defendants engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

167.    At all times relevant the Plaintiffs and the members of the New York Class have been employees and Defendants have been joint employers within the meaning of the NYLL.

168.    The Plaintiffs and the members of the New York Class are covered by the NYLL.

169.    Defendants failed to pay the Plaintiffs and the New York Class overtime wages to which they are entitled under NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

170.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs.

171.    Defendants' violations of the NYLL, as described in this Class Action Complaint, have been willful and intentional.

172.     Due to Defendants' violations of the NYLL, the Plaintiffs and the New York Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION:

### WAGE STATEMENT VIOLATIONS

### New York Labor Law §§ 195 & 198

### On behalf of the Individual Plaintiffs and the New York Class

173.     Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates them as though fully set forth herein.

174.     New York Labor Law §195, subdivision three, requires an employer to furnish to each employee "a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

175.     The Defendants failed to provide wage statements in conformity with New York Labor Law § 195(3).

176.     Due to Defendants' violations of the NYLL §195(3), Plaintiffs and each member of the New York Class are entitled to recover from Defendants damages of One Hundred Dollars ($100.00) for each work week that the violation occurred or continue to occur, up to two thousand five hundred dollars ($2,500.00) per employee together with costs and reasonable attorney's fees.   NYLL §198(1)(d).

**FOURTH CAUSE OF ACTION:**

**WAGE NOTICE VIOLATIONS**

**New York Labor Law §§ 195 & 198**

**On behalf of the Individual Plaintiffs and the New York Class**

177.     Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth herein.

178.     New York Labor Law §195(1)(a), requires an employer to furnish to each employee "a notice containing the following information: the rate or rates of pay and basis thereof…in writing in English and in the language identified by each employee as the primary language of such employee."

179.     Prior to January 2014, the Defendants failed to provide the notice required by New York Labor Law § 195(1)(a) to Plaintiffs and New York Class Members.

180.     Due to Defendants' violations of NYLL §195(1)(a), the Plaintiffs  and each New York Class Member are entitled to recover from Defendant damages of Fifty Dollars ($50.00) for each work week that the violation occurred or continue to occur, up to two thousand five hundred dollars ($2,500.00) per employee, together with costs and reasonable attorney's fees. NYLL §198(1)(b).

## FIFTH CAUSE OF ACTION:

## SPREAD OF HOURS PAY

### 12 N.Y.C.R.R. Part 142

#### On behalf of the Individual Plaintiffs and the Subclass

181.    Plaintiffs reallege and incorporate by reference each allegation contained in the paragraphs above, and by reference replead and incorporate them as though fully set forth herein.

182.    The implementing regulations of the New York Labor Law, and specifically 12 NYCRR §142-2.4, require that "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which…the spread of hours exceeds 10 hours."

183.    Defendants failed to pay Plaintiffs Andres De Los Santos, Angel Rodrigues, and Ramon Santos and the Subclass the *spread of hours premium* to which they are entitled under the NYCRR.

184.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs.

185.    Defendants' violations of New York Law, as described in this Complaint, have been willful and intentional.

186.    Due to Defendant's violations of New York Law, the Plaintiffs are entitled to recover from Defendants their unpaid *spread of hours premium* and liquidated damage, reasonable attorneys' fees, costs of the action, and pre-judgment and post-judgment interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief:

a.   That, at the earliest possible time, Plaintiff be allowed to give notice of this
collective action,

b.   Unpaid overtime wages;

c.   An additional and equal amount as liquidated damages under the FLSA;

d.   Spread of Hours pay;

e.   Statutory damages under New York law for the wage statement and wage notice
violations as alleged herein,

f.   Liquidated damages under the New York Labor Law;

g.   Certification of the state law claims in this action as class actions ;

h.   Pre-Judgment and Post-Judgment interest, as provided by law;

i.   Attorneys' fees and costs of suit, including expert fees; and

j.   Such other injunctive and equitable relief as the Court may deem just and proper.

Dated: Glen Cove, New York
       July 25, 2014

Respectfully Submitted,
STEVEN J. MOSER, P.C.

Steven John Moser
3 School Street, Suite 207B
Glen Cove, New York 11542
(516) 671-1150 • F (516) 882-5420
smoser@moseremploymentlaw.com